1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10                         ----oo0oo----

11   MARK THOMSEN, DAWN J. THOMSEN,
                                        NO. 2:09-CV-01108 FCD/EFB
12           Plaintiffs,

13       v.                             MEMORANDUM AND ORDER

14   SACRAMENTO METROPOLITAN FIRE
     DISTRICT; LOCAL 522 UNION; PAT
15   MONAHAN, an individual; BRIAN
     RICE, an individual; MATT
16   KELLEY, an individual; GREG
     GRENADES, an individual; and
17   DOES 1-50, inclusive,

18           Defendants.
                                        ----oo0oo----
19

20       This matter is before the court on defendants Sacramento

21   Metropolitan Fire District's (the "District") and Local 522

22   Union, Pat Monahan, and Brian Rice's (collectively, the "Union")

23   motions to dismiss plaintiffs' complaint pursuant to Federal Rule

24   of Civil Procedure 12(b)(6).[1]  Plaintiffs Mark Thomsen

25   _____

26       [1]    The court notes that while the docket reflects the
     motion to dismiss is brought by Attorneys for Sacramento
27   Metropolitan Fire District, Matt Kelley, and Greg Granados, the
     motion itself clarifies that it is brought solely by the
28   District.

                                  1

1  ("plaintiff") and Dawn J. Thomsen ("Mrs. Thomsen") oppose the

2  motions. For the reasons set forth below,[2] defendants' motions

3  to dismiss pursuant to Rule 12(b)(6) are GRANTED in part and

4  DENIED in part.

5  <center>**BACKGROUND**</center>

6      At all relevant times, plaintiff was employed by the

7  Sacramento Metropolitan Fire District, which operates in the

8  County of Sacramento. (Pls.' 2d Am. Compl. ("SAC"), filed Apr.

9  22, 2009, [Docket # 1-3], ¶ 1.) Plaintiff alleges in February

10 2006, Fire Chief Don Mette ("Mette") assigned him to the

11 District's Special Investigations Unit. (Id. ¶ 11.) Plaintiff

12 claims that in this capacity he worked under the District's

13 General Counsel Dick Margarita ("Margarita"), assisted with

14 personnel investigations, and conducted background checks on

15 persons seeking employment with the District. (Id.)

16     Plaintiff alleges that in late September 2006, he received

17 an email from a previous female employee (the "former employee")

18 stating that she had been wrongfully terminated. (Id. ¶ 15.)

19 Plaintiff alleges that Margarita instructed him to contact the

20 former employee and have her discuss the matter with Margarita,

21 plaintiff, and Pat Monahan ("Monahan"). (Id.) Plaintiff further

22 alleges that Mette and Margarita utilized Jeff Rinek ("Rinek") to

23 aid the investigation. (Id. ¶ 16.) Plaintiff claims that as a

24 result of this investigation, Mette advised the Board of

25 Directors to approve a settlement with the former employee.

26

27          [2]   Because oral argument will not be of material
   assistance, the court orders this matter submitted on the briefs.
28 E.D. Cal. Local Rule 78-230(h).

(<u>Id.</u>)  Around September 28, 2006, plaintiff claims he was asked
to attend a late-night meeting at which he was advised to keep
silent on the issue.  (<u>Id.</u> ¶ 17.)  Plaintiff further claims that
around the time of the meeting, Mette accused him of discussing
the former employee's complaint with others and ordered him to
keep the issue secret.  (<u>Id.</u> ¶ 19.)

Within a few days of the meeting, plaintiff claims he was
removed from the Special Investigations Unit, allegedly because
he had violated Mette's order not to discuss the former
employee's complaint.  (<u>Id.</u> ¶ 20.)  Plaintiff claims that shortly
thereafter, he was assigned to a different shift and was told he
would return to the day shift "once tempers cooled."  (<u>Id.</u> ¶ 21.)
Plaintiff alleges that around October or November 2006, he met
with the Board of Directors to discuss his concern that the
former employee's case was not properly investigated.  (<u>Id.</u> ¶
22.)  Plaintiff claims that around mid to late November 2006, he
learned that the former employee had received a settlement of
over one-half million dollars.  (<u>Id.</u> ¶ 23.)  Plaintiff claims
that he made inquiries as to why the former employee's complaint
had not resulted in an outside investigation.  (<u>Id.</u> ¶ 24.)

On December 2, 2006, plaintiff alleges he was placed on
administrative leave pending an investigation into an allegation
that plaintiff committed a felony by altering a patient's report.
(<u>Id.</u> ¶ 25.)  Plaintiff contends that he was put on leave as a
result of his investigation into the former employee's situation.
(<u>Id.</u> ¶ 26.)  Plaintiff claims that Rinek performed the
investigation with regard to plaintiff's alleged felony, but that
Mette and Margarita decided the outcome of this investigation.

3

1   (Id. ¶ 27.)  Local 522 Union ("Union") provided plaintiff with an
2   attorney to aid with issues pertaining to his administrative
3   leave.  (Id. ¶ 28.)  Plaintiff alleges the attorney refused to
4   act without first getting approval from Monahan and Brian Rice
5   ("Rice").  (Id.)  While on administrative leave, plaintiff
6   alleges he was asked to attend a meeting on December 14, 2006,
7   with the President and Vice President of the Union.  (Id. ¶ 29.)
8   Plaintiff claims that during the meeting he was told he would be
9   fired if he continued to ask questions about the former employee
10   and continued to "push" with regard to his pending disciplinary
11   case.  (Id.)  Plaintiff alleges that the Union officials were
12   acting at the behest of Margarita and Mette.  (Id.)

13      On December 31, 2006, an article appeared in the Sacramento
14   Bee, reporting that Margarita had signed an affidavit in a
15   superior court action, alleging that plaintiff had committed a
16   felony by materially altering a public report.  (Id. ¶ 30.)
17   Plaintiff claims he had not received a Notice of Intent to
18   Discipline at this time, and as far as he knew, an investigation
19   of the alleged felony had never been completed.  (Id.)

20      On January 2, 2007, plaintiff alleges he retained new
21   counsel because of the conflict of interest between the Union's
22   counsel and the investigation into the former employee's
23   termination.  (Id. ¶ 31.)  Around the same time, plaintiff claims
24   his counsel notified every Board member of their duties to
25   plaintiff.  (Id. ¶ 32.)  Plaintiff also alleges he and his
26   counsel requested the right to speak about the investigation and
27   plaintiff's administrative leave, which was noted on the Board of
28   Director's agenda.  (Id.)

1    Plaintiff also sent a confidential letter to the Board,
2  indicating his suspicions of a cover-up by Mette, Margarita,
3  Chavez, Monahan, and Rice.  (Id.)  Plaintiff alleges that Greg
4  Grenados ("Grenados") breached plaintiff's confidence by
5  informing Mette and Margarita of plaintiff's suspicions regarding
6  the investigation and circumstances surrounding his alleged
7  felony.  (Id.)  Subsequently, plaintiff notified the Attorney
8  General about the District's lack of investigation into the
9  former employee's situation.  (Id. ¶ 33.)  Plaintiff claims that
10  on or about January 17, 2007, four to six armed men knocked
11  forcefully on his residential door.  (Id. ¶ 34.)  Plaintiff
12  alleges these armed men were employed by the District and were
13  directed by Margarita and/or Mette to instill terror on
14  plaintiff's family.  (Id.)

15    On February 14, 2007, plaintiff was advised of the
16  District's intent to dismiss plaintiff.  (Id. ¶ 35.)  On March
17  23, 2007, plaintiff and his counsel attended a pre-disciplinary
18  hearing, conducted by Deputy Chief Geoffrey Miller.  (Id. ¶ 36.)
19  Plaintiff and his attorney gave Deputy Chief Miller a twelve page
20  letter with six attachments, all of which allegedly demonstrated
21  that plaintiff's termination was unsupported by facts or law.
22  (Id.)  Plaintiff claims that Mette and Margarita ignored his
23  letter, and notified him through a letter dated March 26, 2007,
24  that he was terminated as of that date.  (Id. ¶ 37.)  Plaintiff
25  alleges that sometime thereafter, Mette and Margarita learned
26  that several District employees had submitted false documents
27  containing allegedly false college degrees, but that these
28  individuals only received reduced pay and were not terminated.

1  (Id. ¶ 38.)

2      Plaintiff claims that, for the purpose of getting his job

3  back, he initiated and won an arbitration proceeding. (Id. ¶ 39.)

4  Shortly thereafter in November, 2008, plaintiff was informed that

5  his employment would be suspended. (Id. ¶ 40.) Plaintiff then

6  filed a complaint with the District, which was denied on August

7  24, 2007.  (Id. ¶¶ 39-41.)

8      Finally, plaintiff alleges that he filed a complaint with

9  the DFEH regarding his November 2008 suspension, which resulted

10  in his receipt of a right-to-sue notice against the District.

11  (Id. ¶ 42.)  Plaintiffs filed a Complaint in the Superior Court

12  of California for the County of Sacramento on February 22, 2008.

13  The action was removed to this court on April 22, 2009.

14                          **STANDARD**

15      On a motion to dismiss, the allegations of the complaint

16  must be accepted as true.  Cruz v. Beto, 405 U.S. 319, 322

17  (1972).  The court is bound to give the plaintiff the benefit of

18  every reasonable inference to be drawn from the "well-pleaded"

19  allegations of the complaint.  Retail Clerks Int'l Ass'n v.

20  Schermerhorn, 373 U.S. 746, 753 n.6 (1963).  Thus, the plaintiff

21  need not necessarily plead a particular fact if that fact is a

22  reasonable inference from facts properly alleged.  See id.

23      Nevertheless, it is inappropriate to assume that the

24  plaintiff "can prove facts which it has not alleged or that the

25  defendants have violated the . . . laws in ways that have not

26  been alleged."  Associated Gen. Contractors of Calif., Inc. v.

27  Calif. State Council of Carpenters, 459 U.S. 519, 526 (1983).

28  Moreover, the court "need not assume the truth of legal

                              6

conclusions cast in the form of factual allegations." <u>United States ex rel. Chunie v. Ringrose</u>, 788 F.2d 638, 643 n.2 (9th Cir. 1986).  Indeed, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009)(citing <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)).

In ruling upon a motion to dismiss, the court may consider only the complaint, any exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201. <u>See</u> <u>Mir v. Little Co. of Mary Hospital</u>, 844 F.2d 646, 649 (9th Cir. 1988); <u>Isuzu Motors Ltd. v. Consumers Union of United States, Inc.</u>, 12 F. Supp.2d 1035, 1042 (C.D. Cal. 1998).

Ultimately, the court may not dismiss a complaint in which the plaintiff alleged enough facts to "state a claim to relief that is plausible on its face."  <u>Iqbal</u>, 129 S. Ct. at 1949 (citing <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  Only where a plaintiff has failed to "nudge [his or her] claims across the line from conceivable to plausible," is the complaint properly dismissed.  <u>Id.</u> at 1952.  When there are well-pleaded factual allegations, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  <u>Id.</u> at 1950.

**ANALYSIS**

**I.   Plaintiffs' Claims against the Union**

Plaintiffs assert twelve causes of action against the Union. All but one of the claims are asserted individually by plaintiff Mark Thomsen.  The allegations of wrongdoing by the Union include: breach of an implied covenant of good faith and fair

7

1 dealing, breach of contract, negligence, violation of Government

2 Code § 820, declaratory relief for attorney's fees under

3 Government Code § 996.4, violation of 42 U.S.C. § 1983, and

4 breach of the duty of fair representation.  In addition,

5 plaintiff asserts claims against Monahan and Rice, as agents of

6 the Union, which include negligence, negligent infliction of

7 emotional distress, intentional infliction of emotional distress,

8 violation of Government Code § 820, civil conspiracy, and

9 violation of Government Code § 19683.  Mrs. Thomson also brings

10 an individual claim against all defendants for loss of

11 consortium.

12 **A.  Preemption**

13 The Union moves to dismiss claims against the Union and its

14 officers or officials, arguing that seven of plaintiffs' twelve

15 claims are preempted by § 301 of the Labor Management Relations

16 Act (the "LMRA"), subsumed by the duty of fair representation

17 claim, or both.[3]  Therefore, the Union asserts that these claims

18 must be dismissed.

19 State law claims may be preempted by the LMRA where

20 adjudication of such claims would require interpretation of the

21 collective bargaining agreement between the employer and the

22 labor organization.  See <u>Valles v. Ivy Hill Corp.</u>, 410 F.3d 1071,

23 1075 (9th Cir. 2005); <u>Balcorta v. Twentieth Century-Fox Film</u>

24

25    [3]  The court notes that although the Union brings its
preemption argument under the heading of "All Claims Are
Preempted by the Duty of Fair Representation," the Union then

26 argues that the LRMA § 301 preempts plaintiff's claims against
the Union and its officers.  However, § 301 preemption is

27 distinct from duty of fair representation preemption.  <u>See</u>
<u>Phillips</u>, 1996 U.S. Dist. LEXIS 12008, at *10.  As such, the

28 court conducts an analysis for both methods of preemption.

1  Corp., 208 F.3d 1102, 1108 (9th Cir. 2000).  "Section 301 of the

2  LMRA provides federal jurisdiction over '[s]uits for violation of

3  contracts between an employer and a labor organization.'  A suit

4  for breach of a collective bargaining agreement is governed

5  exclusively by federal law under Section 301."  Smith v. Pac.

6  Bell Tel. Co., No. CV-F-06-1756 OWW/DLB, 2007 U.S. Dist. LEXIS

7  31699 (E.D. Cal. April 13, 2007).  "[T]he Supreme Court has

8  interpreted [§ 301] to compel the complete preemption of state

9  law claims brought to enforce collective bargaining agreements."

10 Valles, 410 F.3d at 1075 (citing Avco Corp v. Aero Lodge No. 735,

11 390 U.S. 557, 560 (1968)).  The Ninth Circuit has further noted

12 that "[a]lthough the language of § 301 is limited to 'suits for

13 violation of contracts,' courts have concluded that, in order to

14 give the proper range to § 301's policies of promoting

15 arbitration and the uniform interpretation of collective

16 bargaining provisions, § 301 'complete preemption' must be

17 construed to cover 'most state-law actions that require

18 interpretation of labor agreements.'"  Balcorta, 208 F.3d at 1108

19 (citing Associated Builders & Contractors, Inc. v. Local 302

20 Int'l Bhd. of Elec. Workers, 109 F.3d 1353, 1356 (9th Cir. 1997);

21 see also Valles, 410 F.3d at 1075 ("[T]he Supreme Court has

22 expanded § 301 preemption to include cases the resolution of

23 which is substantially dependent upon the analysis of the terms

24 of a collective bargaining agreement.") (internal citations

25 omitted).

26     "To effectuate the goals of Section 301, preemption should

27 be applied only to 'state laws purporting to determine questions

28 relating to what the parties to a labor agreement agreed, and

9

what legal consequences flow from breaches of that agreement' and

to tort suits which allege 'breaches of duties assumed in

collective bargaining agreements.'"  <u>Livadas v. Bradshaw</u>, 512

U.S. 107, 114 S. Ct. 2068 (1994).  "A claim brought in state

court on the basis of a state-law right that is 'independent of

rights under the collective-bargaining agreement,' will not be

preempted, even if 'a grievance arising from "precisely the same

set of facts" could be pursued.'"  <u>Valles</u>, 410 F.3d at 1076; <u>see</u>

<u>also</u> <u>Townsell v. Ralphs Grocery Co.</u>, No. 09 CV 0793 JM (AJB),

2009 U.S. Dist. LEXIS 46601, *10 (S.D. Cal. June 3, 2009)

(stating "the LMRA preempts state law claims which are

'substantially dependent on the analysis of the terms of' the

collective bargaining agreement and to the extent claims against

the Union rest on such analysis, § 301 would predominate").

Furthermore, state law claims may also be subsumed under

federal law[4] by plaintiff's duty of fair representation claim.

"The duty of fair representation is a corollary of the union's

status as the exclusive representative of all employees in a

bargaining unit."  <u>Phillips v. Int'l Union of Operating</u>

<u>Engineers</u>, No. C-96-0363-VRW, 1996 U.S. Dist. LEXIS 12008, *11

(N.D. Cal. Aug. 7, 1996) (citing <u>Vaca v. Sipes</u>, 386 U.S. 171, 182

(1967)).  "It is judicially created from § 9(a) of the [National

Labor Relations Act (the "NLRA")] , which requires a union 'to

---

[4]     Defendant Union's motion, which is far from a model of
clarity, broadly contends that plaintiffs' claims are preempted
by the duty of fair representation.  However, defendant fails to
identify whether it is asserting preemption under state or
federal law.  Defendant's legal argument is of little help in
offering any guidance on this issue.  As such, the court
addresses both issues.

serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitration.'" <u>Id.</u> "Section 9(a) of the Labor Management Relations Act empowers a union to act as the exclusive bargaining agent of all employees in collective bargaining. <u>Cash v. Chevron Corp.</u>, 1999 U.S. Dist. LEXIS 20709, *4 (N.D. Cal. 1999); 29 U.S.C. § 159(a). "The duties related to this representation are defined solely by federal law" and apply to all representational activity undertaken by the union." <u>Id.</u>

Furthermore, the "federal duty of fair representation preempts the application of state substantive law which attempts to regulate conduct that falls within the union's duty to represent its members." <u>Id.</u> at *5. Indeed, "[s]tate law claims are preempted '*whenever* a plaintiff's claims invoke rights derived from a union's duty of fair representation.'" <u>Id.</u> at *6 (emphasis in original); <u>see also</u> <u>Richardson v. United Steelworkers of America</u>, 864 F.2d 1162, 1168 (holding that because plaintiff's allege that the Union breached a duty arising from its status as their exclusive collective bargaining agent pursuant to the NLRA, <u>Vaca</u> requires this duty to be defined by federal law).

Moreover, to the extent plaintiffs asserts claims implicates the duty of fair representation, under California state law, the Public Employment Relations Board ("PERB") has exclusive jurisdiction pursuant to the Meyers-Milias-Brown Act ("MMBA"). The MMBA "imposes on local public entities a duty to meet and confer in good faith with representatives of recognized employee

organizations, in order to reach binding agreements governing

wages, hours, and working conditions of the agencies' employees."

Coachella Valley Mosquito v. California Public Employment

Relations Board, 35 Cal. 4th 1072, 1083.  In 2000, the

legislature incorporated the MMBA within the PERB's jurisdiction.

Id. at 1085.  "In determining whether conduct in a given case

could give rise to an unfair practice claim, the court must

construe the activity broadly."  Personnel Com. v. Barstow

Unified School Dist., 43 Cal. App. 4th 871 (1996).

### 1.   Breach of Implied Covenant of Good Faith and Fair Dealing

Plaintiff's third cause of action is for breach of implied

covenant of good faith and fair dealing against the Union.  "In

California, a claim for the breach of the implied covenant of

good faith and fair dealing 'is necessarily based on the

existence of an underlying contractual relationship, and the

essence of the covenant is that neither party to the contract

will do anything which would deprive the other of the benefits of

the contract.'"  Marbley v. Kaiser Permanente Med. Group, Inc.,

No. C 09-2484 JF (PVT), 2009 U.S. Dist. LEXIS 61957 (N.D. Cal.

July 20, 2009) (citations omitted).  "The theory underlying a

claim for breach of the implied covenant was developed to protect

employees who lacked the job security created by a collective

bargaining agreement."  Id.  Therefore, "[i]ndividuals protected

by a collective bargaining agreement often need not resort to

state law claims to obtain relief.  As a result, 'section 301

preempts the California state cause of action for breach of the

implied covenant of good faith and fair dealing when an employee

1  enjoys comparable job security under a collective bargaining

2  agreement.'  Marbley, 2009 U.S. Dist. LEXIS 61957, at *11

3  (quoting Milne Employees Ass'n v. Sun Carriers, 960 F.2d 1401,

4  1411 (9th Cir. 1991)); see also Truex v. Garrett Freightlines,

5  Inc., 784 F.2d 1347, 1349-52 (9th Cir. 1985) (holding section 301

6  preempts claims for intentional infliction of emotional distress

7  and breach of implied covenant of good faith and fair dealing).

8      Plaintiff is an individual protected by a collective

9  bargaining agreement and thus, any allegation that the Union's

10  conduct violated an employment agreement will require

11  interpretation of the agreement.  See Marbley, 2009 U.S. Dist.

12  LEXIS 61957, at *11.  As such, Section 301 preempts his state law

13  claim for breach of implied covenant of good faith and fair

14  dealing.

15      Furthermore, plaintiff's third cause of action is subsumed

16  by the Union's duty of fair representation under federal and

17  state law.  Plaintiff alleges that the Union breached the implied

18  covenant of good faith and fair dealing contained in the

19  employment agreement; specifically, plaintiff contends that the

20  employment agreement "obligated defendants to perform the terms

21  and conditions of the agreement fairly and in good faith."

22  Because plaintiff bases his cause of action on the Union's duties

23  as defined by the employment agreement, plaintiff's claim for

24  breach of the implied covenant of good faith and fair dealing is

25  subsumed by the Union's duty of fair representation.

26  /////

27  /////

28  /////

13

**2.   Negligent Infliction of Emotional Distress**

Plaintiff's fifth cause of action is for negligent infliction of emotional distress against Monahan and Rice.[5] "Section 301 preemption of emotional distress claims depends on whether the CBA governs the alleged discriminatory behavior. When the CBA does govern the behavior, and the underlying claims are preempted, the emotional distress claims are also preempted." Martinez v. Lucky Stores, No. C 97-4685 FMS, 1998 U.S. Dist. LEXIS 14740, *5-6 (N.D. Cal. Sept. 18, 1998); see also Cook v. Lindsay Olive Growers, 911 F.2d 233, 239-40 (9th Cir. 1990). "In contrast, when the underlying claim is not preempted, neither is the claim for emotional distress." Martinez, 1998 U.S. Dist. LEXIS 14740, at *6; see Perugini v. Safeway Stores, Inc., 935 F.2d 1083, 1089 ("To the extent that resolution of the negligent infliction of emotional distress claims requires interpretation of the CBA, these claims are preempted by section 301."). Because disciplinary actions and letters of warning are governed by the collective bargaining agreement, resolution of claims arising from such alleged conduct necessarily entails examination and interpretation of the agreement, thereby preempting those claims. Stallcop v. Kaiser Foundation Hospitals, 820 F.2d 1044, 1049 (1987).

Plaintiff's complaint details various disciplinary actions taken against him by defendants Monahan, Rice, Kelly, and Granados, including being put on leave, receipt of letters of

---

[5]   This claim is also brought against defendants Kelly and Granados.  However, as set forth above these individual defendants have not filed a motion to dismiss.

intent to terminate, a pre-disciplinary hearing, and his discharge.  Because these allegations arise out of the alleged disciplinary actions against him and because disciplinary actions and letters of warning are governed by the collective bargaining agreement, resolution of plaintiff's claims require examination and interpretation of the agreement.  As such, plaintiff's claim for negligent infliction of emotional distress is preempted by § 301 of the LMRA.

Furthermore, plaintiff's fifth cause of action is also subsumed by the Union's duty of fair representation under federal and state law.  Plaintiff specifically alleges that: (1) Monahan and Rice owed a duty to be part of an unbiased investigation into any wrongdoing alleged against plaintiff; (2) Kelly owed a duty to provide plaintiff with a forum to address the allegations against him; and (3) Grenados owed plaintiff a duty to keep information provided to him in confidence.  Each of these alleged duties constitute "representational activity."  See Cash, 1999 U.S. Dist. LEXIS 20709, at *4; see also Richardson, 864 F.2d at 1167 ("plaintiffs did not allege any breach of a state tort duty that exists independently of the NLRA-established collective bargaining relationship, which is the central concern of the NLRA").  Because plaintiff alleged that the Union members breached a duty that arose from the Union's status as the exclusive bargaining agent, his claim for negligent infliction of emotional distress is subsumed into claims that the Union violated its duty of fair representation.

/////

/////

### 3.   Breach of Contract

Plaintiff's seventh cause of action is for breach of contract against the Union.  "Section 301 of the LMRA provides federal jurisdiction over '[s]uits for violation of contracts between an employer and a labor organization.'  A suit for breach of a collective bargaining agreement is governed exclusively by federal law under Section 301."  Smith, 2007 U.S. Dist. LEXIS 31699, at *14-15; see also Balcorta, 208 F.3d at 1108 ("The pre-emptive force of § 301 is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization.") (internal quotations omitted).  Plaintiff's claim for breach of contract is based on the "contract of employment" with defendants.  (Compl. ¶ 82.)  As such, any resolution of this claim depends on an analysis of the collective bargaining agreement and is thus preempted under § 301.

Further, plaintiff's claim is also subsumed by claims regarding the Union's duty of fair representation because plaintiff alleges that the Union breached its contract by failing to provide him with "competent and unbiased counsel."

### 4.   Intentional Infliction of Emotional Distress

Plaintiff's eighth cause of action is for intentional infliction of emotional distress against Monahan and Rice.[6]  "The Ninth Circuit has held that state tort claims for IIED are preempted [by the LMRA] under some circumstances" where the evaluation of the claim is "inextricably intertwined with

---

[6]   Plaintiff also brings this claim against the District and other individual defendants.

consideration of the terms of a labor contract."  <u>Lappin v.</u>
<u>Laidlaw Transit</u>, 179 F. Supp. 2d 1111, 1125 (N.D. Cal. 2001)
(quoting <u>Allis-Chalmers Corp. v. Lueck</u>, 471 U.S. 202, 213
(1985)).  For instance, the Ninth Circuit has concluded that
"state tort claims for intentional infliction of emotional
distress are preempted when they arise out of the employee's
discharge or the conduct of the defendants in the investigatory
proceedings leading up to the discharge."  <u>Scott v. Machinists</u>
<u>Automotive Trades Dist. Lodge No. 190,</u> 827 F.2d 589 (9th Cir.
1987).  Nevertheless, when "a claim does not require
interpretation of the CBA, on the other hand, preemption is not
appropriate."  <u>Lappin</u>, 179 F. Supp. 2d at 1125.

Here, plaintiff appears to base his intentional infliction
of emotional distress claim on his termination.  Though plaintiff
several times refers to various "actions" or "acts" of defendants
without further specificity, he does allege that the
"constructive termination by defendants" was done with an intent
to cause injury to plaintiff.  (Compl. at ¶ 96.)  To the extent
that plaintiff's claim is founded upon the events surrounding and
including his termination, plaintiff's claim requires
interpretation of the CBA and is thus preempted by § 301.

Further, to the extent that plaintiff's claim encompasses
his previous allegations that the individual defendants failed to
perform their representative duties as members of the Union, the
court finds this claim subsumed by claims regarding the Union's
duty of fair representation.

/////

/////

17

### 5.   Negligence

Plaintiff's ninth cause of action is against all defendants for negligence.  With respect to the Union, plaintiff alleges that Monahan and Rice owed plaintiff a duty to be part of an unbiased investigation.

"State law negligence claims are preempted if the duty relied on is created by a collective bargaining agreement and without existence independent of the agreement." <u>Ward v. Circus Circus Casinos, Inc.</u>, 473 F.3d 994, 999 (9th Cir. 2007); <u>see also</u> <u>Jones v. Bayer Healthcare LLC</u>, No. 08-2219 SC, 2008 U.S. Dist. LEXIS 61737, *15-16 (N.D. Cal. Aug. 12, 2008) (holding that plaintiff's negligence claim was preempted by the LMRA because the various duties plaintiff accused defendants of breaching were determined by the collective bargaining agreement). Nevertheless, "'non-negotiable state-law rights . . . independent of any right established by contract' are not preempted." <u>Hayden v. Reickerd</u>, 957 F.2d 1506, 1509 (9th Cir. 1991) (citations omitted).

Plaintiff's allegations that Monahan and Rice owed plaintiff a duty to be part of an unbiased investigation arises from the collective bargaining agreement.  Plaintiff fails to make any argument or reference any legal authority that this alleged duty is independent of any right established by contract or is a non-negotiable state-law right.  Accordingly, plaintiff's negligence claim is preempted by § 301.  For the same reasons, the court also finds that plaintiff's negligence claim is subsumed by the Union's duty of fair representation.

/////

18

1                   **6.   Civil Conspiracy**

2          Plaintiff's fourteenth cause of action is for civil

3     conspiracy against Monahan and Rice; specifically, plaintiff

4     alleges that these defendants, along with defendant Kelly,

5     conspired to find a way to terminate plaintiff for the purpose of

6     preventing his investigation into the former employee.

7          "The key to determining the scope of preemption under

8     section 301 is not how the complaint is framed, but whether the

9     claims can be resolved only by interpreting the terms of the

10    collective bargaining agreement." Raptopolous v. WS, Inc., 738

11    F. Supp. 394, 396 (D. Or. 1990).  With respect to a conspiracy

12    claim, if resolution of the claim cannot be addressed without

13    examining the process of collective bargaining and the collective

14    bargaining agreement, such a claim is preempted by Section 301.

15    Id. at 396-97 (holding that resolution of the plaintiff's claims

16    of conspiracy and interference with contract could not be

17    addressed without examining the process of collective bargaining

18    and the collective bargaining agreement because an evaluation of

19    these claims required an analysis of the preferential hiring list

20    in the collective bargaining agreement and posed a significant

21    threat to the collective bargaining process).

22         Plaintiff's civil conspiracy claim is based upon his

23    allegation that defendants conspired to terminate in order to

24    prevent his investigation into the former employee.  In his

25    complaint, plaintiff alleges that his termination is controlled

26    by the employment agreement, and indeed predicates several causes

27    of action upon this.  As such, plaintiff's conspiracy claim

28

depends upon interpretation of the terms of the collective
bargaining agreement and is preempted by Section 301.[7]

**B.    Statute of Limitations/Exhaustion**

**1.    Claims Preempted by Federal Labor Law**

The Supreme Court has held that actions under the LMRA are
governed by the six-month statute of limitations set out in §
10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b).
DelCostello v. Teamsters, 462 U.S. 151, 163-64 (1983).
Furthermore, claims preempted by Section 301 are subject to the
six month statute of limitations.  Madison v. Motion Picture Set
Painters & Sign Writers Local 729, 132 F. Supp. 2d 1244, 1261
(C.D. Cal. 2000); see also Cook v. Lindsay Olive Growers, 911
F.2d 233, 236 (9th Cir. 1990) ("The district court was correct in
applying a six-month statute of limitations to any of
[plaintiff's] claims which were preempted by § 301").  Claims
outside of that six-month period are subject to dismissal.
DelCostello, 462 U.S. at 155.[8]

With respect to duty of fair representation claims,
"DelCostello's six month statute of limitations has been applied
consistently in fair representation cases."  Madison v. Motion
Picture Set Painters & Sign Writers Local 729, 132 F. Supp. 2d

---

[7]    Although plaintiff contends that his civil conspiracy
cause of action is not within the exclusive jurisdiction of the
PERB, the court need not address this issue as it is preempted
under federal law.

[8]    The applicable statute of limitations may be tolled
under either the doctrine of equitable tolling or the doctrine of
equitable estoppel.  Huseman v. Icicle Seafoods, Inc., 471 F.3d
1116, 1120 (9th Cir. 2006).  However, plaintiff fails to argue
any equitable considerations with respect to preemption by
federal labor law.

20

1244, 1260 (C.D. Cal. 2000).  Indeed, "[u]niformity and predictability suggest all unfair representation claims should be governed by the same statute of limitations."  <u>Cantrell v. Int'l Brotherhood of Electrical Workers, Local 2021</u>, 32 F.3d 465, 467 (10th Cir. 1994).  "In a duty of fair representation case, the six-month statute of limitations begins to run 'when an employee knows or should know of the alleged breach of duty of fair representation by a union."  <u>Madison</u>, 132 F. Supp. at 1260.

Plaintiff's claims all arise out of the alleged failure of the Union to provide him with competent counsel and the events surrounding his attempted termination.  Plaintiff became aware of the alleged breach of duty of fair representation by the Union when he retained new counsel in January 2, 2007.  Further, plaintiff received his termination letter on or about March 26, 2007.  However, plaintiff did not file his complaint in state court until February 22, 2008, almost a year after these events. Therefore, plaintiff's claims brought under the LMRA, which are preempted by § 301, are barred because the applicable statute of limitations period had expired by the time he filed his complaint.[9]

### 2.  Claims Subject to PERB exclusive jurisdiction

The PERB has the exclusive jurisdiction "to make the initial determination as to whether the charges of unfair practices are justified, and, if so, what remedy is necessary." (Cal. Gov.

---

[9]   At this point the plaintiff makes no clear allegation in his Second Amended Complaint that the claims against the Union are based upon his November, 2008 suspension. Plaintiff is granted leave to amend his complaint to the extent that he can allege facts that are not preempted by § 301, and not subject to the statute of limitations.

Code. § 3541.5).   Accordingly, the California Supreme Court has

held that "a party must exhaust administrative remedies before

resorting to the courts." <u>Coachella Valley</u>, 35 Cal. 4th at 1080

(citing <u>Abelleira v. District Court of Appeal</u>, 17 Cal. 2d 280,

292 (1941)).

The language utilized by the state legislature in

constructing the statute of limitations period for the PERB is

analogous to the wording of the statute of limitations period set

out in § 10(b) of the National Labor Relations Act, 29 U.S.C. §

160(b).   "Any employee, employee organization, or employer shall

have the right to file an unfair practice charge, except that the

board shall not... [¶] ... [i]ssue a complaint in respect of any

charge based upon an alleged unfair practice occurring more than

six months prior to the filing of the charge." <u>Coachella Valley</u>,

35 Cal. 4th at 1086 (citing Cal. Gov. Code, § 3541.5, subd. (a).)

As set forth above, plaintiff was aware of the alleged

breach of duty of fair representation on January 2, 2007 when he

retained new counsel because of the alleged "conflict of interest

between the counsel the Union provided him and the investigation

in the former female employee's termination." (Compl. at ¶ 31).

The statutory period began as soon as plaintiff became aware of

possible unfair practices committed by his former counsel.   With

respect to claims arising out of his attempted termination and

acts related to that termination, the statute of limitations

began running at the time he received his termination letter in

March 2007.   Because plaintiff filed his complaint almost a year

later, plaintiff failed to comply with the statute of limitations

22

period for filing a breach of duty of fair representation claim
with the PERB.

Plaintiff does not dispute that he did not present his claim
to the PERB.[10]   Rather, plaintiff argues that even if the PERB
does have exclusive jurisdiction over his claims that are
subsumed under the duty of fair representation, bringing the
stated claims to the PERB would have been futile, excusing him
from exhausting his administrative remedies before resorting to
the courts.   Plaintiff also asserts that pursuing an
administrative claim would have resulted in irreparable harm.

To meet the futility exception requirements, "it is not
sufficient that a party can show what the agency's ruling would
be on a particular issue or defense.   Rather, the party must show
what the agency's ruling would be on a particular case."   Id.
Plaintiff's primary argument is that the PERB has consistently
refused to give individuals their choice of counsel.   However,
this argument relates to a showing of the agency's ruling on a
particular issue.   Significantly, plaintiff provides no argument
or authority to support his contention that the PERB has already
made a determination that would render his particular claims with
the administrative board futile.   As such, plaintiff has failed
to allege sufficient facts or proffer legal argument to support
his futility argument.

---

[10]   In the opposition, plaintiff conclusorily asserts that
his claims are outside of the scope of the union-employee
relationship, and are thus not subsumed by the duty of fair
representation claim. Plaintiff provides no citation to legal
authority to support this blanket contention.   As set forth
above, the court finds that many of plaintiff's claims are
subsumed by the duty of fair representation.

1    With respect to plaintiff's second asserted exception to the
2  exhaustion remedy, irreparable injury "has been applied rarely
3  and only in the clearest of cases." City and County of San
4  Francisco v. International Union of Operating Engineers, Local
5  39, 151 Cal. App. 4th 938, 948 (1st Dist. 2007); see Dep't of
6  Personnel Admin. v. Superior Court, 5 Cal. App. 4th 155, 170
7  (1992) (applying the irreparable injury exception where the state
8  was facing an "unprecedented budget crisis" and there was "the
9  great potential for irreparable harm in the nature of increased
10  layoffs").  However, an administrative remedy "is not inadequate"
11  and does not constitute irreparable injury "merely because
12  additional time and effort will be consumed by its being pursues
13  through the ordinary course of law." Omaha Indemnity Co. v.
14  Superior Court, 209 Cal. App. 3d 1266, 1269 (2d Dist. 1989).

15    Plaintiff contends that he could not wait for a
16  determination by the PERB because doing so would have prejudiced
17  his opportunity to exonerate himself.  Again, plaintiff neither
18  alleges nor argues any facts to support this claim, nor does he
19  cite any legal authority to support this argument.  Accordingly,
20  plaintiff has not alleged sufficient facts that would support
21  application of the narrow exception of irreparable harm.

22    As such, based upon the court's findings with respect to
23  preemption and the applicable statute of limitations, defendant
24  Union's motion to dismiss plaintiff's claims for (1) breach of
25  the implied covenant of good faith and fair dealing; (2)
26  negligent infliction of emotional distress; (3) breach of

24

contract; (4) intentional infliction of emotional distress; (5) negligence; and (6) civil conspiracy is GRANTED.

### C.   California Government Code § 820[11]

Plaintiff's thirteenth cause of action is for violation of Government Code § 820, and is asserted against all defendants. The Union contends that because it is not a public entity, the individual defendants are not public employees pursuant § 820.

California Government Code § 820 provides, in pertinent part, that "a public employee is liable for injury caused by his act or omission to the same extent as a private person."   This statute clarifies that public employees are not immune from liability for causing injury to individuals.   See Zelig v. County of Los Angeles, 27 Cal. 4th 1112, 1127 (2002).   However, by its plain language, the statute, by itself does not establish a cause of action nor a basis for relief.   To the extent plaintiff seeks to set forth a wrongful termination claim, the allegations of the complaint make clear that the Union was not the plaintiff's employer and thus, did not terminate plaintiff.

Furthermore, pursuant to Government Code § 811.4, the term "public employee" is a reference to an employee of a public entity.   In California, the term "public entity" encompasses the State, the Regents of the University of California, a county, city, district, public authority, public agency and any other political subdivision or public corporation in the State.   Cal. Gov't Code § 811.2.   The Union is not within any of these

---

[11]   The court notes that plaintiff labels this claim as "Violation of Gov. Code § 820," but in fact asserts a claim for wrongful termination against defendants as individuals, pursuant to Gov. Code § 820.

1  categories, and therefore is not a "public entity" pursuant to §

2  811.4.

3       Accordingly, the Union's motion to dismiss plaintiff's claim

4  brought pursuant to California Government Code § 820 for wrongful

5  termination is GRANTED.

6       **D.   Violation of 42 U.S.C. § 1983**

7       Plaintiff's twenty-first cause of action is brought against

8  the Union for violation of 42 U.S.C. § 1983.  Specifically,

9  plaintiff claims that the Union violated his Sixth Amendment

10 right to counsel by providing him with biased and compromised

11 legal representation.  The Union contends that the Sixth

12 Amendment applies to state criminal cases rather than civil

13 actions, and thus, plaintiff fails to state a viable claim for

14 relief.

15      "The Sixth Amendment provides for the right to effective

16 assistance of counsel, but it applies only for criminal cases,

17 not civil cases." Chang v. Rockridge Manor Condo., No. C-07-4005

18 EMC, 2008 U.S. Dist. LEXIS 10595, *34 (N.D. Cal. Feb. 13, 2008)

19 (citing Pokuta v. TWA, 191 F.3d 834 (7th Cir. 1999).  Indeed,

20 "[i]t is well-settled that the Sixth Amendment right to effective

21 assistance of counsel applies only to critical stages of criminal

22 prosecutions." United States v. Bodre, 948 F.2d 28, 37 (1st Cir.

23 1991); see also Anderson v. Sheppard, 856 F.2d 741, 747-48 (6th

24 Cir. 1988) (stating "'[a] criminal defendant's right to counsel

25 arises out of the sixth amendment, and includes the right to

26 appointed counsel when necessary.'  In contrast, '[a] civil

27 litigant's right to retain counsel is rooted in fifth amendment

28 notions of due process . . . '").

1    As the proceedings plaintiffs complain of are civil in

2 nature, plaintiff fails to state a claim for violation of his

3 Sixth Amendment rights.  As such, the Union's motion to dismiss

4 plaintiff's twenty-first cause of action is GRANTED.

5        **E.   Violation of Cal. Gov. Code § 19683**

6    Plaintiff's twenty-second cause of action is for violation

7 of Gov. Code § 19683 against Monahan and Rice.  Defendants

8 contend that plaintiff fails to state a claim because the

9 whistle-blower statute pertains to the California State Personnel

10 Board, its officers and employees, not employees of a local Union

11 district.

12    California Government Code § 19863, the "whistle-blower

13 statute," was implemented to encourage state officers and

14 employees to investigate and report actual or suspected

15 violations of law in or related to state employment.  <u>Shoemaker</u>

16 <u>v. Myers</u>, 2 Cal. App. 4th 1407, 1425 (1992).  As such, § 19683

17 provides for penalties where "a public employee uses official

18 authority to harm another public employee by means other than

19 formal disciplinary proceedings, or where a nonpublic employee

20 uses official authority to harm a public employee in any way."

21 <u>Id.</u> at 1424.  Such penalties serve the purpose of providing

22 "redress to a limited class, state employees, for harm suffered

23 by the use of official power to deter reporting of unlawful

24 government activity."  <u>Id.</u>

25    Plaintiff concedes that Monahan is Vice President of the

26 Union and Rice is President of the Union.  (Compl. ¶¶ 5-6.)  As

27 set forth in the court's analysis of plaintiff's thirteenth cause

28 of action, the Union does not qualify as a public entity, nor are

the individual defendants "public employees" pursuant to section

19683.   Thus, Monahan and Rice are not liable under the plain

language of the statute.   Accordingly, defendant Union's motion

to dismiss plaintiff's twenty-second cause of action is GRANTED.

### F.   Declaratory Relief for Attorney's Fees

Plaintiff's sixteenth cause of action is for declaratory

relief for attorney's fees under Gov. Code § 996.4 against the

Union.   The Union contends that because it is not a public

employer nor a public entity, § 996.4 is not applicable.

California Government Code § 996.4 provides, "If after

request a *public entity* fails or refuses to provide an employee .

. . with a defense against a civil action or proceeding brought

against him and the employee retains his own counsel to defend

the action or proceeding, he is entitled to recover from the

*public entity* such reasonable attorney's fees, costs, and

expenses as are necessarily incurred by him."   (Emphasis added);

see <u>DeGrassi v. City of Glendora</u>, 207 F.3d 636, 643 (9th Cir.

2000) (noting that § 996,4 "applies when a *public entity* fails or

refuses to provide a requested defense") (emphasis added); <u>see

also</u> <u>Mallari v. Home Depot U.S.A.,</u> No. C 95-00898-LEW, 1996 U.S.

Dist. LEXIS 3113, *11 (N.D. Cal. March 18, 1996).   As set forth

above, pursuant to Gov. Code § 811.4, the Union is not a "puboic

entity."   As such, plaintiff fails to set forth a claim for

relief under the plain language of the statute.   Accordingly, the

Union's motion to dismiss plaintiff's claim for attorney's fees

pursuant to § 996.4 is GRANTED.

/////

/////

28

### G.   Loss of Consortium

Mrs. Thomsen's single cause of action in the second amended complaint alleges that as a result of the defendants' negligent and intentional actions, her marital relationship with her husband has suffered.   The Union contends that all of plaintiff's claims against defendant Union fail, and thus, as a derivative claim, Mrs. Thomsen's loss of consortium claim must likewise fail.

"In California, the spouse of an individual injured by a third party has a cause of action for loss of consortium: the loss of conjugal fellowship and sexual relations." Holt v. Am. Med. Sys., 1997 U.S. Dist. LEXIS 24194, *17 (citing Rodriquez v. Bethlehem Steel Corp., 12 Cal. 3d 382 (1974)).   However, "loss of consortium is . . . derivative of other injuries and not an injury in and of itself." Lamphere v. United States, No. 06CV2174-LAB (JMA), 2008 U.S. Dist. LEXIS 22917, *13 (S.D. Cal. March 24, 2008); see also Maffei v. Allstate Cal. Ins. Co., 412 F. Supp. 2d 1049, 1058 (2006) (holding that because plaintiff's underlying claims were tenable, defendant's motion to dismiss plaintiff's loss of consortium claim must be denied).

Because the court has granted defendant's motion to dismiss with respect to all of the underlying causes of action upon which Mrs. Thomsen bases her loss of consortium claim, the Union's motion to dismiss this derivative claim is similarly GRANTED.

## II.  Plaintiffs' Claims against the District

Plaintiffs asserts eighteen of his twenty-four total causes of action against the District.   Mrs. Thomsen also brings her individual claim for loss of consortium against the District.

29

Plaintiff's claims include: wrongful termination in violation of public policy, violation of § 1102.5 of the labor and employment code, breach of covenant of good faith and fair dealing, breach of implied covenant not to terminate except for good cause, negligent infliction of emotional distress, unlawful retaliation in violation of FEHA, breach of contract, intentional infliction of emotional distress, negligence, negligent supervision and retention, violation of Government Code § 815.2, violation of Government Code § 820, civil conspiracy, violation of Government Code § 12653, unlawful retaliation in employment, violation of 42 U.S.C. § 1983 (5th Amendment procedural due process), and violation of 42 U.S.C. § 1983 (1st Amendment).   The District contends that most of the claims are baseless or not cognizable against a public entity and moves to dismiss plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(6).[12]

### A. Reinstatement

Defendant District first argues that plaintiff's complaint should be dismissed in its entirety because plaintiff was reinstated; therefore, defendant District argues plaintiff suffered no adverse employment and thus has no standing to bring causes of action based on wrongful termination.

"The fact of successfully grieving an adverse employment action does not preclude an employee from pursuing a claim of

---

[12]   The court notes that plaintiffs concede the fifth, ninth, tenth, eleventh, twelfth, thirteenth, fifteenth, and twenty-second causes of action to the moving parties. Accordingly, defendants' motions to dismiss these claims are GRANTED.   The court also notes that the District does not move to dismiss plaintiff's twenty-third cause of action for violation of plaintiff's First Amendment rights.   As such, the court does not address this claim herein.

discrimination." <u>Fonseca v. Sysco Food Servs. Of Ariz., Inc.</u>, 374 F.3d 840, 848 (9th Cir. 2004); <u>see also</u> <u>Plymale v. City of Fresno</u>, No. CV F 09-0802, 2009 U.S. Dist. LEXIS 58920, *17 (E.D. Cal. June 25, 2009) (holding that plaintiff's success at being reinstated does not distract from alleged adverse employment action which would have been avoided in the absence of alleged discrimination or retaliation).  Accordingly, the fact that plaintiff was reinstated does not preclude him from asserting claims based on adverse employment action.

As such, the District's motion to dismiss for lack of standing based on plaintiff's reinstatement is DENIED.

**B.   Wrongful Termination and Unlawful Retaliation in Violation of Public Policy**

Plaintiff's first claim for relief is against the District, alleging wrongful termination in violation of public policy as retaliation for plaintiff's failure to keep silent regarding the investigation of the former employee.  Plaintiff's nineteenth cause of action is against the District for unlawful relation in employment.  The District contends that as a public entity, it is immune from liability arising out of common law tort claims under California Government Code § 815(a).

California Government Code § 815(a) provides, in relevant part: "Except as otherwise provided by statute . . . [a] public entity is not liable for any injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person." Cal. Gov. Code § 815(a).  Section 811.2 provides: "'Public entity' includes the State, the Regents of the University of California, a county, city, district, public

authority, public agency and any other political subdivision or public corporation in the State." Cal. Gov. Code § 811.2.  Thus, "direct tort liability of public entities must be based on a specific statute declaring them to be liable, or at least creating some specific duty of care . . . Otherwise, the general rule of immunity for public entities would be largely eroded by the routine application of general tort principles."  <u>Eastburn v. Req'l Fire Prot. Auth.</u>, 31 Cal. 4th 1175, 1183 (2003).

Section 815(a) immunity applies to claims for wrongful discharge in violation of public policy because a claim for wrongful termination in violation of public policy is a common law cause of action judicially created by <u>Tameny v. Atlantic Richfield Co.</u>, 27 Cal. 3d 167 (1980).[13]  <u>Miklosy v. Regents of University of Cal.</u>, 44 Cal. 4th 876, 900 (2008) (noting that § 815 "bars Tameny actions against public entities."); <u>Palmer v. Regents of the Univ. Of Cal.</u>, 107 Cal. App. 4th 899, 909 (2003) (holding that a claim for wrongful termination in violation of public policy was barred under section 815(a) because the University was a public entity); see <u>Ross v. San Francisco Bay Area Rapid Transit</u>, 146 Cal. App. 4th 1507, 1517 (2007) (granting summary judgment on claims against BART for wrongful termination in violation of public policy because it had no liability pursuant to § 815); <u>Tan v. University of California</u>, No. 06-4697, 2007 U.S. Dist. LEXIS 27417, *13-14 (N.D. Cal. 2007); <u>Dao v.</u>

---

[13]   Plaintiff does not cite any common law basis to support his claim for unlawful retaliation in violation of public policy. However, he appears to style it in the same manner as a claim for wrongful termination in violation of public policy; as such, the court treats it similarly.

<u>Univ. of Cal.</u>, No. C-04-2257 JCS, 2004 U.S. Dist. LEXIS 16828, *27-28 (N.D. Cal. Aug. 13, 2004).

The District is a public entity pursuant to Section 811.2. <u>See</u> <u>Eastburn v. Regional Fire Protection Authority</u>, 98 Cal. App. 4th 426 (concluding that because defendants Fire Protection District and others were public entities under Section 815, they only owed a limited statutory duty to plaintiffs), *aff'd*, 31 Cal. 4th 1175 (2003).[14]  As such, the District is immune from liability arising out of common law tort claims under California law.  As claims for wrongful discharge and unlawful retaliation in violation of public policy are considered common law torts under California law, plaintiff's claims are barred by Section 815(a).[15]

For the foregoing reasons, the District's motion to dismiss plaintiff's wrongful termination and unfair retaliation claims is GRANTED.

### C.   Civil Conspiracy

Plaintiff's fourteenth cause of action is for civil conspiracy against the District, Kelly, Monahan, and Rice. Plaintiff bases his conspiracy claim on his unlawful retaliation and wrongful termination claims.  The District contends that as a public entity, under California Government Code section 815, plaintiff's cause of action for conspiracy is barred because the underlying torts upon which he bases this claim are barred.

---

[14]    Indeed, the court notes that plaintiff concedes that the District is a "Governmental Organization" in his complaint. (Compl. at 3, [Docket # 1-5]).

[15]    In his opposition, plaintiff wholly failed to respond to defendant District's assertion of immunity.

1    "Under California law, there is no separate and distinct

2    tort cause of action for civil conspiracy." <u>Entm't Research</u>

3    <u>Group v. Genesis Creative Group</u>, 122 F.3d 1211, 1228 (9th Cir.

4    1997); <u>see also</u> <u>Applied Equipment Corp. v. Litton Saudi Arabia</u>

5    <u>Ltd.</u>, 7 Cal. 4th 503, 514 (1994) ("Conspiracy is not an

6    independent tort."). A plaintiff can only recover under a theory

7    of civil conspiracy "against a party who already owes the duty

8    and is not immune from liability based on applicable substantive

9    tort law principles." <u>Applied Equipment Corp.</u>, 7 Cal. 4th at

10   514. Accordingly, to have a valid civil conspiracy cause of

11   action, there must be another tort upon which the plaintiff can

12   base his conspiracy claim. <u>Entm't Research Group</u>, 122 F.3d at

13   1228. Merely alleging underlying tort causes of action is

14   insufficient to support a conspiracy cause of action. <u>Id.</u>; <u>see</u>

15   <u>also</u> <u>Hafiz v. Greenpoint Mortgage Funding, Inc.</u>, No. C 09-01729,

16   2009 U.S. Dist. LEXIS 60818, *9 (N.D. Cal. July 16, 2009)

17   (dismissing plaintiff's civil conspiracy claim because the

18   plaintiff's underlying tort claims failed, rendering the civil

19   conspiracy claim unsupported).

20   Here, plaintiff states in his opposition papers that his

21   civil conspiracy claim is based on defendant District's "unlawful

22   retaliation" and "wrongful termination" claims.[16] However, as

23   the court has found that defendant District has immunity for such

24

25   [16] The court notes that plaintiff does not specifically
     identify which unlawful retaliation claim he is referring to,
26   unlawful retaliation in violation of public policy or unlawful
     retaliation in violation of FEHA. However, because there is no
27   cognizable claim for conspiracy under FEHA, the court assumes
     plaintiff is referring to his claim for unlawful retaliation in
28   violation of public policy. <u>See</u> <u>Wynn v. Nat'l Broadcasting Co.,</u>
     <u>Inc.</u>, 234 F. Supp. 2d 1067, 1116 (C.D. Cal. 2002).

claims pursuant to § 815, plaintiff's civil conspiracy claim is
unsupported by underlying tort causes of action.

Therefore, defendant's motion to dismiss plaintiff's civil
conspiracy claim is GRANTED.

### D.   Violation of Labor and Employment Code

Plaintiff's second cause of action is against the District
for violation of Section 1102.5 of the Labor and Employment Code.
The District argues that plaintiff has failed to allege enough
facts to support an action under Section 1102.5; specifically,
the District contends that plaintiff has failed to demonstrate
that his disclosure is related to a violation or noncompliance
with a federal or state statute, rule, or regulation.

Section 1102.5(b) states: "An employer may not retaliate
against an employee for disclosing information to a government or
law enforcement agency, where the employee has reasonable cause
to believe that the information discloses a violation of state or
federal statute, or a violation or noncompliance with a state or
federal rule or regulation."  Further, Section 1102.5 (c) states:
"An employer may not retaliate against an employee for refusing
to participate in an activity that would result in a violation of
state or federal statute, or a violation or noncompliance with a
state or federal rule or regulation."

In his complaint, plaintiff broadly alleges that "he felt
the investigation into the termination of the former female
employee was not being done properly" and that he informed
officials about his concerns.  However, it is unclear from the
face of the complaint what state or federal statute was or would
be violated.  Further, the factual basis for these violations is

1  unclear.  As such, plaintiff's allegations are insufficient to
2  put defendant District on notice of the claims against it and the
3  factual basis for those claims.

4      In his opposition, plaintiff identifies particular statutes
5  that he contends his employers allegedly violated, including
6  Civil Code § 43, California Penal Code § 240, and the Fair
7  Employment and Housing Act ("FEHA"), Government Code § 12900.
8  Plaintiff contends that he told various persons about the alleged
9  wrongdoing associated with the former employee, including the
10  District Board President and Vice President, Mette, Margarita,
11  and the Attorney General's office.

12     Therefore, the District's motion to dismiss plaintiff's
13  Section 1102.5 claim is GRANTED with leave to amend.

14     **E.   Breach of Contract and Breach of Implied Covenant of**
            **Good Faith and Fair Dealing and Covenant Not to**
15          **Terminate**

16     Plaintiff's third cause of action is for breach of the
17  implied covenant of good faith and fair dealing against the
18  District.  Specifically, plaintiff alleges that defendant
19  breached the covenant of good faith and fair dealing by
20  "adversely employing" him in retaliation for reporting legal
21  violations to a governing agency.  (See SAC ¶ 57.)  Plaintiff's
22  fourth cause of action is for breach of implied covenant not to
23  terminate without good cause.  Plaintiff's seventh cause of
24  action is against the District and the Union for breach of
25  contract.  The District contends that as a public entity, it is
26  immune from plaintiff's claim because in California, civil
27  service employees cannot state a cause of action for breach of

28

36

1  contract or breach of the implied covenant of good faith and fair
2  dealing.

3        "It is well settled in California that public employment is
4  not held by contract but by statute and that, insofar as the
5  duration of such employment is concerned, no employee has a
6  vested contractual right to continue in employment beyond the
7  time or contrary to the terms and conditions fixed by law."
8  Miller v. State, 18 Cal. 3d 808, 813 (1977); see also Bernstein
9  v. Lopez, 321 F.3d 903 (9th Cir. 2003) ("[P]ublic employment in
10 California is, in general, regulated by statute, the rights of a
11 public employee are statutory, and 'no employee has a vested
12 contractual right to continue in employment beyond the time or
13 contrary to the terms and conditions fixed by law.'").  "This
14 rule applies at all levels of government: state; county; or
15 special district."  Summers v. City of Cathedral City, 225 Cal.
16 App. 3d 1047 (1990); see Scott v. Solano County Health & Soc.
17 Servs. Dep't, 459 F. Supp. 2d 959, 966-67 (E.D. Cal. 2006)
18 (dismissing claims for violation of the covenant of good faith
19 and fair dealing brought by a county employee).

20       "Since the good faith covenant is an implied term of a
21 contract, the existence of a contractual relationship is thus a
22 prerequisite for any action for breach of the covenant."
23 Shoemaker v. Myers, 52 Cal. 3d 1, 23-24 (1990).  Furthermore, the
24 "statutory provisions controlling the terms and conditions of
25 civil service employment cannot be circumvented by purported
26 contracts in conflict therewith."  Id. at 814.  Indeed, the Ninth
27 Circuit, in reviewing California case law, has recognized "that
28 neither an express or an implied contract can restrict the

37

1   reasons for, or the manner of, termination of public employment

2   provided by California statute." <u>Bernstein</u>, 321 F.3d at 906.

3   Moreover, the Ninth Circuit has recently held that a breach of

4   contract claim is not a viable remedy when an MOU governs the

5   terms of employment between a civil service employee and a public

6   agency.  <u>Gibson v. Office of the AG</u>, 2009 U.S. App. LEXIS 20054,

7   *19 (9th Cir. Mar. 18, 2009) (affirming the district court's

8   dismissal pursuant to Rule 12(b)(6) of a breach of contract claim

9   between an attorney and her public employer, the Office of the

10  Attorney General, allegedly based on an MOU between the employer

11  and the plaintiff's labor unions).

12      As an employee of the Sacramento Metropolitan Fire District,

13  plaintiff is a public officer and therefore his employment is

14  bound by statute, not contract.  <u>See</u> <u>Humbert v. Castro Valley</u>

15  <u>Fire Protection Dist.</u>, 214 Cal. App. 2d 1, 13 (1963) (holding

16  that like police officers, employees of the fire district are

17  public officers as they have been delegated a public duty, the

18  performance of which is a part of the governmental function of

19  the political unit for which they are acting as agents).  Because

20  the existence of a contractual relationship is a prerequisite for

21  any action for breach of contract or breach of implied covenants,

22  and because the relevant statutory provisions cannot be

23  circumvented, plaintiff cannot state a cause of action for breach

24  of contract, breach of the implied covenant of good faith and

25  fair dealing, or for breach of an implied covenant not to

26  terminate without good cause.

27

28

38

1    Therefore, the District's motion to dismiss plaintiff's

2  breach of contract claim and breach of implied covenant claims is

3  GRANTED.

4    **F.   Intentional Infliction of Emotional Distress**

5    Plaintiff's eighth cause of action is against the District

6  for intentional infliction of emotional distress.  The District

7  contends that as a public entity, it is immune from liability for

8  this common-law cause of action under Gov. Code section 815.

9    "[C]laims for . . . intentional infliction of emotional

10 distress against public entities and public employees fall well

11 within the [Cal. Gov. Code 815] immunities' borders."  Davison v.

12 Santa Barbara High Sch. Dist., 48 F. Supp. 2d 1225, 1232 (C.D.

13 Cal. 1998); see also Bragg v. E. Bay Reg'l Park Dist., No. C-02-

14 3585 PJH, 2003 U.S. Dist. LEXIS 23423, *23 (N.D. Cal. Dec. 19,

15 2003) (holding that as a public entity, the District was immune

16 from liability for intentional infliction of emotional distress);

17 Harmston v. City & County of San Francisco, No. C 07-01186, 2007

18 U.S. Dist. LEXIS 74891, *21-22 (holding that where the plaintiff

19 has failed to specifically allege any applicable statute that

20 makes the public entity directly liable for intentional

21 infliction of emotional distress, under section 815 the public

22 entity is not liable); see also Doe v. Lassen Cmty. College

23 Dist., 2007 U.S. Dist. LEXIS 95866 (E.D. Cal. Dec. 27, 2007)

24 (noting that several California district courts have held that

25 Cal. Gov. Code § 815 acts as a specific bar to IIED claims

26 against public employees or entities).

27   Accordingly, as a public entity, the District is immune from

28 liability for intentional infliction of emotional distress

1   pursuant to Gov. Code § 815.[17]   Therefore, the District's motion

2   to dismiss plaintiff's intentional infliction of emotional

3   distress claim is GRANTED.

4           **G.   Unlawful Retaliation in Violation of FEHA**

5           Plaintiff's sixth cause of action is against the District

6   for violation of FEHA, Government Code § 12940(h).   Specifically,

7   plaintiff contends that the District took adverse action against

8   him in retaliation for his complaints about unlawful treatment

9   during his employment with the District and his investigation

10  into the former employee.   The District contends that plaintiff

11  should be barred from asserting any claims based upon his

12  termination because his DFEH complaint only included his

13  suspension.   Alternatively, defendant District contends that

14  plaintiff's complaint lacks any alleged facts of illegal

15  discrimination and requests a more definite statement should the

16  court deny its motion to dismiss.

17          "Under California law an employee must exhaust the . . .

18  administrative remedy provided by the FEHA by filing an

19  administrative complaint with the DFEH and obtaining the DFEH's

20  notice of right to sue before bringing suit on a cause of action

21  under the FEHA or seeking the relief provided under the FEHA."

22  Howell v. City of Fresno, No. CV-F-07-371 OWW/TAG, 2007 U.S.

23  Dist. LEXIS 40169, *26-27 (E.D. Cal. May 22, 2007) (citing Rojo

24  v. Kliger, 52 Cal. 3d 65, 88 (1990)).   "To exhaust his or her

25  administrative remedies as to a particular act made unlawful by

26  the Fair Employment and Housing Act, the claimant must specify

27  ─────────────────

28          [17]   Again, in his opposition, plaintiff wholly failed to
    respond to defendant District's assertion of immunity.

that act in the administrative complaint, even if the complaint
does specify other cognizable wrongful acts." <u>Id.</u> at *27.
Nevertheless, the "general principle at work in these cases is
that the scope of a civil complaint alleging a violation of §
12940(a) is limited by the scope of the administrative
complaint." <u>Steffens</u>, 2009 U.S. Dist. LEXIS 36006, at *12; <u>see</u>
<u>also</u> <u>Rodriquez v. Airborne Express</u>, 265 F.3d 890, 897 (9th Cir.
2001) ("Allegations in the civil complaint that fall outside the
scope of the administrative charge are barred for failure to
exhaust.").

    "The 'scope' of the administrative charge is defined by what
a subsequent investigation may reveal." <u>Steffens</u>, 2009 U.S.
Dist. LEXIS 36006, at *13.  "When an employee seeks judicial
relief for incidents not listed in his original charge to the
[EEOC OR DFEH], the judicial complaint nevertheless may encompass
any discrimination like or reasonably related to the allegations
of the [EEOC or DFEH] charge, including new acts occurring during
the pendency of the charge before the EEOC [or DFEH]." <u>Wilson-</u>
<u>Combs v. Cal. Dep't of Consumer Affairs</u>, 555 F. Supp. 2d 1110,
1115 (E.D. Cal. 2008); <u>see also</u> <u>Okoli v. Lockheed Technical</u>
<u>Operations Co.</u>, 36 Cal. App. 4th 1607, 1615 (1995) ("Essentially,
if an investigation of what was charged in the EEOC would
necessarily uncover other incidents that were not charged, the
latter incidents could be included in a subsequent action.")  "In
the context of the FEHA, the failure to exhaust an administrative
remedy is a jurisdictional, not a procedural defect." <u>Id.</u>

    Plaintiff's FEHA claim arises out of both his termination
and suspension.  Thus, to the extent that plaintiff relies on

41

1   separate acts for his FEHA claim, he must have filed a complaint

2   with the DFEH for both incidents in order to bring a claim

3   against the District, unless the two acts are "reasonably

4   related."   In his complaint, plaintiff alleges that he exhausted

5   the administrative remedy by filing an administrative complaint

6   with the DFEH for the suspension he received in November 2008.

7   (Compl. ¶ 42.)   However, plaintiff alleges that both his

8   suspension and termination arose because of his investigation

9   into the former employee.   (See Compl. ¶¶ 26, 44.)   As such,

10  taking plaintiff's allegations as true and drawing all reasonable

11  inferences therefrom, the court finds that these events are

12  "reasonably related" and thus, plaintiff's DFEH claim for his

13  suspension exhausted the administrative remedies requirement.

14       In order to establish a prima facie case on a FEHA

15  retaliation claim, a plaintiff must demonstrate that (1) "he

16  engaged in a protected activity," (2) "his employer subjected him

17  to adverse employment action," and (3) "there is a causal link

18  between the protected activity and the employer's action."

19  McAlindin v. County of San Diego, 192 F.3d 1226, 1238 (9th Cir.

20  1999) (citations and quotations omitted).   Specifically, FEHA

21  makes it unlawful for an employer "to discharge, expel, or

22  otherwise discriminate against any person because the person has

23  opposed any practices forbidden under [the statute] or because

24  the person has filed a complaint, testified, or assisted in any

25  proceeding under [the statute]."   Cal. Gov't Code § 12940(h).

26       In his complaint, plaintiff alleges that "adverse action"

27  was taken against him in retaliation for his complaints of

28  discriminatory treatment and for his investigation into the

42

former employee.  In his opposition papers, plaintiff clarifies
that he was suspended for preserving evidence of investigation
into sexual assault and abuse of the former employee at the
workplace.  Taking plaintiff's allegations as true and drawing
all reasonable inferences therefrom, plaintiff alleges that he
was terminated and suspended for opposing and complaining about
sexual harassment of a female employee at the workplace.  This is
sufficient to apprise defendant District of the claim against it
and the factual bases upon which it rests.

     Accordingly, defendant's motion to dismiss plaintiff's FEHA
claim is DENIED.

     **H.   Violation of Fourteenth Amendment**

     Plaintiff's twentieth cause of action is against the
District for violation of procedural due process rights under the
Fifth Amendment arising out of the failure to be heard before the
appropriate tribunal prior to his termination.  Plaintiff
concedes that he improperly brought this claim pursuant to the
Fifth Amendment, but seeks leave to amend to assert a Fourteenth
Amendment claim for the same violation.[18]  Accordingly, defendant
District's motion to dismiss is GRANTED with leave to amend.

     **I.   Motion to Strike**

     Defendant District moves to strike all detailed reference to
the former employee.  Federal Rule of Civil Procedure 12(f)
enables the court by motion by a party or by its own initiative
to "order stricken from any pleading . . . any redundant,

_____

     [18]   In its reply, defendant District does not address
plaintiff's motion to amend this claim.  The court interprets
this silence as a non-opposition.

1   immaterial, impertinent, or scandalous matter." The function of
2   a 12(f) motion is to avoid the time and expense of litigating
3   spurious issues. <u>Fantasy, Inc. v. Fogerty</u>, 984 F.2d 1524, 1527
4   (9th Cir. 1993), <u>rev'd on other grounds</u>, 510 U.S. 517 (1994); <u>see</u>
5   <u>also</u> 5A Charles A. Wright & Arthur R. Miller, <u>Federal Practice</u>
6   <u>and Procedure</u> § 1380 (2d ed. 1990). Rule 12(f) motions are
7   generally viewed with disfavor and not ordinarily granted because
8   they are often used to delay and because of the limited
9   importance of the pleadings in federal practice. <u>Bureerong v.</u>
10  <u>Uvawas</u>, 922 F. Supp. 1450, 1478 (C.D. Cal. 1996). A motion to
11  strike should not be granted unless it is absolutely clear that
12  the matter to be stricken could have no possible bearing on the
13  litigation. <u>Lilley v. Charren</u>, 936 F. Supp. 708, 713 (N.D. Cal.
14  1996).

15      In this case, the court cannot find that the factual
16  allegations pertaining to the former employee are redundant,
17  immaterial, impertinent, or scandalous. Rather, many of
18  plaintiff's claims arise out of his reaction to the circumstances
19  surrounding the investigation into the former employee's
20  complaint. Accordingly, defendant's motion to strike is DENIED.

21                          **CONCLUSION**

22      For the foregoing reasons, defendants' motions to dismiss
23  pursuant to Rule 12(b)(6) is GRANTED in part and DENIED in part.
24  Specifically:
25  1.  The Union's motion to dismiss is GRANTED in its entirety.
26      Plaintiff is granted leave to amend in conformance with this
27      order.
28  /////

1   2.   The District's motion to dismiss:

2        a.   plaintiff's claims for wrongful termination and

3             unlawful retaliation in violation of public policy is

4             GRANTED;

5        b.   plaintiff's claim for civil conspiracy is GRANTED;

6        c.   plaintiff's second claim for violation of Labor Code

7             Section 1102.5 is GRANTED with leave to amend;

8        d.   plaintiff's claims for breach of contract, breach of

9             implied covenant of good faith and fair dealing, and

10            breach of covenant not to terminate is GRANTED;

11       e.   plaintiff's claim for intentional infliction of

12            emotional distress is GRANTED;

13       f.   plaintiff's claim for unlawful retaliation FEHA claim

14            is DENIED; and

15       g.   plaintiff's claim for violation of procedural due

16            process is GRANTED with leave to amend.

17  C.   The District's motion to strike is DENIED.

18       IT IS SO ORDERED.

19  DATED: October 19, 2009

20

21                                    _____
                                      FRANK C. DAMRELL, JR.
22                                    UNITED STATES DISTRICT JUDGE

23

24

25

26

27

28

                                45